Luis GUILLEN–GARCIA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 92–3731.

United States Court of Appeals,
Seventh Circuit.

Argued April 27, 1993.

Decided July 2, 1993.

Application Note 13, § 2R1.1 applies and § 2F1.1 does not.

Elpidio Villarreal, Deborah M. Neyens (argued), Sonnenschein, Nath & Rosenthal, Chicago, IL, for petitioner.

Fred Foreman, U.S. Atty., Crim. Div., Chicago, IL, Richard M. Evans, William J. Howard, David J. Kline, Alison R. Drucker, Dept. of Justice, Office of Immigration Litigation, Washington, DC, A.D. Moyer, Samuel Der–Yeghiayan, I.N.S., Chicago, IL, Marshall T. Golding (argued), Office of Immigration Litigation, Civ. Div., Washington, DC, for respondent.

Before FLAUM, RIPPLE, and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Luis Guillen–Garcia, a native of Mexico who has resided in the United States for twenty-seven years and who is a lawful permanent resident, petitions for review of the decision of the Board of Immigration Appeals (BIA) that refused to grant him a discretionary waiver of deportation under section 212(c) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1182(c) (1988). Mr. Guillen–Garcia contends that the BIA abused its discretion in denying him relief. Because the BIA did not consider adequately the issue of rehabilitation, we grant the petition

for review and remand the case to the BIA for further proceedings.

# I

## BACKGROUND

Mr. Guillen–Garcia (Mr. Guillen)[1] has resided in the United States since the age of fourteen. He is married to a United States citizen and has five children, all of whom are United States citizens. Additionally, his parents are lawful permanent residents, and he has four siblings who are citizens and three siblings who are lawful permanent residents.

On May 10, 1974, Mr. Guillen was convicted of two counts of aggravated battery for causing great bodily harm to another individual, and of one count of aggravated battery through the use of a deadly weapon. He was sentenced to five years of probation. On April 18, 1984, Mr. Guillen was convicted of attempted murder and was sentenced to ten years imprisonment, but served only four and a half years of the sentence and was then placed on probation for the remainder of his term.

As a result of his convictions, the Immigration and Naturalization Service (INS) issued an Order to Show Cause and Notice of Hearing to Mr. Guillen on July 30, 1984, charging him with deportability as an alien who has been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct. *See* 8 U.S.C. § 1251(a)(4). In the deportation proceedings held before an Immigration Judge (IJ), Mr. Guillen conceded that he was deportable, but requested a waiver of inadmissibility under section 212(c) of the Act.

At the waiver hearing, Mr. Guillen testified that he was innocent of the crimes for which he had been convicted. He stated that he had pleaded guilty to the aggravated battery charges on the advice of his public defender, who informed him that he would receive probation by doing so. According to Mr. Guillen, the incident leading to his conviction occurred when he and some friends had attended a dance, at which a fight ensued when other men tried to take away Mr. Guillen's

and his friends' dates. He testified that a distant cousin had a gun, which his cousin fired and then placed in Mr. Guillen's hands. At that time, a police officer saw Mr. Guillen with the gun, told him to discard it, and then arrested him. Mr. Guillen further testified that he did not then own and has never owned a gun.

As to the attempted murder conviction, Mr. Guillen testified that he had gone out to buy a soft drink and encountered a group of men fighting on the street. He stated that he asked them to let him pass, but he was shot in the back and leg, lost consciousness, and woke up in the hospital. On cross-examination, Mr. Guillen claimed that he believed he had been shot by an unidentified police officer. Although he was convicted of attempted murder following a jury trial, Mr. Guillen denied possessing a weapon at any time during the night in question. Mr. Guillen testified that, after his conviction, he was under the impression that his public defender was going to pursue an appeal on his behalf but none was filed.

Mr. Guillen testified that, while in prison, he worked as a cook and was paid approximately $100.00 per month, about half of which he retained for his own use, and the remainder of which he sent to his wife. During cross-examination of Mrs. Guillen, however, she stated that her husband had sent her money only for one year during his prison term. Mr. Guillen stated that he earned diplomas in welding and mechanics while incarcerated, that he was visited about twice a month by relatives, and that he studied the Bible during his free time. After his release from prison, Mr. Guillen was employed by C.E. Smith in lawn maintenance. Subsequently, he was employed by Parent Petroleum, where he has a long employment history. Since his release from prison, Mr. Guillen testified that his wife and children have not received any public assistance and that he and his family are active in a Bible class sponsored by the church they attend.

Mr. Guillen further testified that he has left the United States only once since he began to reside here, and that his wife and children had lived in Puerto Rico for approxi-

---

**1.** In his brief, Mr. Guillen–Garcia refers to himself as Mr. Guillen and thus we will respect his preference and also refer to him by that name throughout this opinion.

mately one year when her mother and father were in ill health. According to Mr. Guillen, his children attended school in Puerto Rico but did not adjust well because they did not speak Spanish fluently and had difficulty making friends. Mr. Guillen stated that his wife and children would not accompany him if he were deported to Mexico, that his wife has no relatives there, and that he has only one relative there, an uncle whom he has never met. He further testified that he doubted his wife alone would be able to support herself and their children if he were deported.

During the hearing, Mrs. Guillen and two of the Guillens' children also testified concerning the hardship that would befall them if Mr. Guillen were deported. Mrs. Guillen further testified that their oldest daughter had developed ulcers and psychiatric problems during Mr. Guillen's incarceration. In addition, she testified that she has a steady factory job earning approximately $4.50 per hour, and that she lives very close to her brother and sister-in-law. Finally, in response to a question by the IJ, Mrs. Guillen indicated that, to her knowledge, her husband has never owned a gun.

Numerous relatives also testified or submitted affidavits to the effect that the Guillens have a close-knit family and that Mr. Guillen tends either to stay at home or to attend family functions. Mr. Guillen's parents testified that they were ill, that their son and other children live close to them and help them out, and that Mr. Guillen contributes about $20.00 per week toward their support. Letters from Mr. Guillen's church and employer attested to his good character and work record. Finally, a letter from his parole officer stated that Mr. Guillen was under minimum supervision at the time of the hearing, although during cross-examination Mr. Guillen stated that he had personally spoken to his parole officer only on two occasions.

## II

## THE DECISION OF THE IMMIGRATION JUDGE

The IJ found Mr. Guillen to be deportable and then turned to the issue of Mr. Guillen's request for section 212(c) relief. As a threshold matter, the IJ first determined that Mr. Guillen was statutorily eligible for such relief because he had proven that he had an unrelinquished domicile of seven consecutive years following a grant of permanent resident status. The IJ next applied the principles set forth in *Matter of Marin*, 16 I & N Dec. 581 (BIA 1978), which requires a balancing of the adverse and favorable factors surrounding an applicant's petition for section 212(c) relief. On the basis of *Marin*, Mr. Guillen was required to demonstrate unusual or outstanding equities in order to qualify for a favorable exercise of discretion based on the seriousness of the crimes of which he was convicted.

The IJ found that the negative factors with respect to Mr. Guillen's waiver application were the two convictions. While acknowledging that it was impermissible to challenge the convictions within the context of the deportation proceedings, the IJ determined that he could take into consideration Mr. Guillen's explanations of the circumstances surrounding their commission. The favorable factors in the analysis included Mr. Guillen's length of residence in this country, his early age at the time of arrival, his family ties, his employment history, his family's hardship if he were deported, and his rehabilitative efforts. On balance, the IJ found that the positive factors associated with Mr. Guillen's application for section 212(c) relief outweighed the negative factors. Accordingly, the IJ granted Mr. Guillen's request for a section 212(c) waiver.

## III

## PROCEEDINGS BEFORE THE BIA

The INS appealed the decision to the BIA. It argued that the IJ had erred in determining that Mr. Guillen had demonstrated rehabilitation, that the IJ had erred in finding that Mr. Guillen had demonstrated outstanding equities warranting a favorable exercise of discretion, and that the IJ had erred in considering Mr. Guillen's claims of innocence

with respect to the convictions that formed the basis of the deportation proceedings. In reversing the IJ's decision to grant Mr. Guillen a section 212(c) waiver, the BIA determined that Mr. Guillen had demonstrated outstanding equities but nonetheless failed to qualify for section 212(c) relief because his denial of guilt regarding the convictions demonstrated a failure to accept responsibility and a lack of rehabilitation.

The BIA determined that the IJ had erred in accepting Mr. Guillen's versions of the events surrounding his convictions. In the BIA's view, the IJ had allowed Mr. Guillen to mount a collateral attack on the judgments of conviction. Board Decision at 5. Next, the BIA determined that, in light of the serious nature of the convictions, Mr. Guillen was required to demonstrate outstanding equities in order to qualify for section 212(c) relief. *Id.* at 6. Reviewing the evidence submitted, the BIA determined that the favorable factors regarding Mr. Guillen's petition were his length of residence in this country, his arrival here at a young age, his marriage to a United States citizen, his five children's American citizenship, his strong family ties in the United States, his consistent employment history, his residence with and support of his family, his church attendance and study of the Bible, and his family's hardship if he were deported. These favorable factors were sufficient, held the BIA, to establish outstanding equities. *Id.* at 6–7.

Next, the BIA considered the factors that were adverse to Mr. Guillen's section 212(c) application. *Id.* at 7. It found that, in light of Mr. Guillen's refusal to acknowledge guilt as to his convictions, the IJ had erred in determining that Mr. Guillen was rehabilitated. *Id.* The BIA further determined that the very serious nature of Mr. Guillen's crimes counseled against a favorable exercise of discretion on his behalf and thus it denied Mr. Guillen's waiver application. *Id.* at 8.

## IV

### ANALYSIS

A. *Standard of Review*

Pursuant to 8 U.S.C. § 1105a(a), we have jurisdiction to review final deportation or-

ders. The decision to grant section 212(c) relief is discretionary, and our review is accordingly "limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner." *Cordoba–Chaves v. INS,* 946 F.2d 1244, 1246 (7th Cir.1991). Under this standard, we shall reverse a discretionary determination by the BIA only if it "was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis...." *Id.* (citing *Bal v. Moyer,* 883 F.2d 45, 46 (7th Cir. 1989)).

 Aliens who have been lawful permanent residents for seven years and whose deportations have been ordered for certain specified grounds are statutorily eligible to apply for section 212(c) relief. *Akinyemi v. INS,* 969 F.2d 285, 288 (7th Cir.1992). Statutory eligibility for section 212(c) relief does not establish an entitlement to a waiver of deportation, but instead requires the Attorney General (or the BIA as delegate) to balance the social and humane considerations in favor of the alien against adverse factors that demonstrate his undesirability as a permanent United States resident. *Id.* The alien bears the burden of showing that he warrants a favorable exercise of discretion, and the BIA may require a heightened showing of favorable equities in the presence of serious adverse factors. *Id.* Favorable factors to be considered include

family ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character.

*Matter of Marin,* 16 I & N Dec. at 583. The BIA must conduct a full exploration of the equities associated with the alien's application, but even a showing of outstanding equi-

ties does not require a favorable exercise of discretion; rather, the BIA may determine that the presence of negative factors outweighs unusual or even outstanding equities. *Akinyemi,* 969 F.2d at 288.

### B. *Positions of the Parties on Appeal*

Mr. Guillen contends that the BIA abused its discretion in refusing his application for section 212(c) relief. In his view, the BIA failed to consider adequately important aspects of his case, including his post-conviction behavior and the emotional and financial hardship that he and his family would suffer if he were deported. He further contends that the BIA abused its discretion in applying a per se rule that the failure to acknowledge guilt as to the convictions underlying a deportation proceeding negates a finding of rehabilitation. Finally, he contends that the evidence he presented at the waiver hearing was sufficient to establish his entitlement to section 212(c) relief. By contrast, the INS urges us to deny the petition for review on the ground that the BIA adequately considered the record of the waiver proceedings and appropriately exercised its discretion in denying a section 212(c) waiver to Mr. Guillen.

### C. *Discussion*

#### 1.

At the outset, it is important to note that, in many respects, the BIA's review of this case is comprehensive. We set out in detail those contentions that the BIA correctly addressed.

■ Mr. Guillen's contention that the BIA failed to consider adequately his post-conviction behavior and the hardship that he and his family would suffer if he were deported is without merit. We have previously stated that the BIA need not "write an exegesis on every contention." *Akinyemi,* 969 F.2d at 289 (quoting *Becerra–Jimenez v.*

*INS,* 829 F.2d 996, 1000 (10th Cir.1987)). The BIA must consider and assess the record as a whole and render an opinion that reflects a reasoned decision. *Id.* We must be vigilant that, in considering claims alleging the BIA failed to consider adequately the evidence presented, we do not reweigh the evidence and substitute our own judgment for that of the BIA. *See Cordoba–Chaves,* 946 F.2d at 1246.

The BIA's decision demonstrates that it adequately considered Mr. Guillen's post-conviction behavior, particularly his employment history, his support of his family, and his religious practices. Specifically, the BIA found those factors to constitute outstanding equities in Mr. Guillen's favor. Similarly, the BIA's decision also demonstrates that it adequately considered the hardship that would result to Mr. Guillen and to his family if he were deported, although it found the degree of hardship to be less extreme than had the IJ. Accordingly, we cannot accept Mr. Guillen's contention that inadequate consideration was given either to his post-conviction behavior or to the hardship that he and his family would suffer upon his deportation.

#### 2.

■ We now come to the one aspect of the BIA's otherwise careful opinion that gives us pause. Mr. Guillen contends that the BIA applied a per se rule that his failure to admit guilt with respect to the convictions forming the basis of his deportation proceedings negates a finding that he is rehabilitated.

■ We agree with the BIA that an alien seeking section 212(c) relief may not use the waiver hearings as a means to mount a collateral attack on a judgment of conviction. *Rassano v. INS,* 377 F.2d 971, 974 (7th Cir.1966) (orderly administration of justice requires that the INS and reviewing court go no further than judgment of conviction in deportation proceedings).[2] We also agree

---

2. *See also Trench v. INS,* 783 F.2d 181, 184 (10th Cir.) (alien cannot use deportation proceedings to collaterally attack state law conviction), *cert. denied,* 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986); *Avila–Murrieta v. INS,* 762 F.2d 733, 736 (9th Cir.1985) (INS may not examine validity of conviction for deportation purposes); *Zinnanti*

*v. INS,* 651 F.2d 420, 421 (5th Cir.1981) (per curiam) (immigration authorities must look solely to judicial record of final conviction and may not make independent assessment of validity of guilty plea); *Chiaramonte v. INS,* 626 F.2d 1093, 1098 (2d Cir.1980) (alien adjudged guilty by foreign tribunal may not mount collateral attack on

that Mr. Guillen's crimes were of a serious and violent nature, and, because they formed the basis of the deportation proceedings, the BIA was obligated to examine the gravity of this criminal activity. *Cordoba–Chaves,* 946 F.2d at 1247. Furthermore, the BIA correctly held that Mr. Guillen's criminal history was such that he must demonstrate outstanding equities in order to qualify for a favorable exercise of discretion with respect to his section 212(c) application. *See id.* ("More serious negative factors require a heightened showing of favorable evidence, which may even have to involve unusual or outstanding equities.") (citations omitted). We also observe, as we have previously, that rehabilitation is an important factor that will ordinarily be required before section 212(c) relief will be granted. *Vergara–Molina v. INS,* 956 F.2d 682, 685 (7th Cir.1992) (citing *Matter of Edwards,* Interim Decision 3134 at 8 (available at 1990 WL 385757, 1990 BIA LEXIS 8 (BIA May 2, 1990)). Nonetheless, while rehabilitation is an important factor to be considered in the exercise of discretion, *Cordoba–Chaves,* 946 F.2d at 1247 (citing *Matter of Edwards,* Interim Decision 3134 at 8), it is not an absolute prerequisite to section 212(c) relief, *Vergara–Molina,* 956 F.2d at 685, and therefore cannot be the sole factor considered in assessing an alien's application for a waiver of deportation.

Similarly, while an acknowledgment of culpability as to the convictions underlying the deportation proceedings is an important aspect of rehabilitation, it cannot be the exclusive indicator used by the BIA when it determines whether an alien ought to be granted a favorable exercise of discretion under section 212(c). As we have recently observed, "[r]ehabilitation is scarcely a readily determinable fact in the ordinary sense and the Board necessarily makes a judgment call, involving an estimate or prediction of an individual's future conduct." *Palacios–Torres v. INS,* 995 F.2d 96, 99 (7th Cir.1993). Here, however, it appears that the BIA relied exclusively on Mr. Guillen's refusal to

acknowledge guilt regarding his convictions. Exclusive reliance on this one factor does not constitute adequate consideration of all of the circumstances surrounding Mr. Guillen's efforts to demonstrate rehabilitation. Accordingly, this matter must be remanded for reconsideration and clarification of the BIA's determination that Mr. Guillen has not been rehabilitated. This determination must be made on the basis of all relevant evidence, not merely his refusal to admit guilt. We emphasize, as we have in prior decisions, that we do not have authority to determine the weight that the BIA should afford to the factors in favor of granting a section 212(c) petition. *See, e.g., Garcia–Lopez v. INS,* 923 F.2d 72, 74 (7th Cir.1991). Consequently, the BIA may give great weight to acknowledgment of guilt in assessing rehabilitation. However, it may not consider this factor the exclusive relevant factor. We stress that we intimate no opinion as to the result. That issue is entrusted to the Board. We require only that its decision make clear that it considered all evidence of record.

### Conclusion

The petition for review is granted and the case is remanded to the BIA for further proceedings consistent with this opinion.

PETITION FOR REVIEW GRANTED; CASE REMANDED.

---

conviction in deportation proceedings); *Longoria–Castenada v. INS,* 548 F.2d 233, 236 (8th Cir.) (immigration authorities may not go beyond judicial record of conviction to make an independent determination of guilt or innocence), *cert.*

*denied,* 434 U.S. 853, 98 S.Ct. 169, 54 L.Ed.2d 123 (1977); *Aguilera–Enriquez v. INS,* 516 F.2d 565, 570 (6th Cir.1975) (same), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976).